In the Matter of CHARLES R. METZ, Appellant, *v.* GILDA MORLEY, Respondent.

Fourth Department, April 4, 1968.

*Fleischer & Fitzer* (*Norman B. Fitzer* of counsel), for appellant.

*George F. Francis* for respondent.

DEL VECCHIO, J. Petitioner appeals from a judgment of Family Court which awarded custody of a 10-year-old child, Cindy Metz, to her mother in this habeas corpus proceeding instituted by her father, and which directed the father to pay support and medical expenses of the child.

The parties were married, lived and divorced in Pennsylvania. Prior to this proceeding their three children, Randy, Linda and Cindy, (who at the time of the hearing were 18, 15 and 10 years old respectively) always lived in Pennsylvania. Petitioner is a successful and prosperous contractor and gentleman farmer who has maintained a comfortable home for his family. The mother left the home briefly in January, 1962 and again for a seven-month period beginning in the fall of the same year. After returning in March, 1963 she left permanently in June of that year, taking her two daughters with her. She filed a complaint for divorce against her husband in the May 1963 Term in Washington County, Pennsylvania. Linda, the older daughter, returned to her father's home after about two months' absence and Cindy subsequently had an asthmatic attack, entered a hospital and went back to her father's residence on discharge. In October, 1963 a decree was granted in the Court of Common Pleas of Washington County, Pennsylvania, awarding custody of the three children to petitioner with visitation rights to the mother, who admitted in her pleading "that the said father of the said children is a fit and proper person to have the general custody of said children and that the best interests and general and permanent welfare of the said children would be promoted by permitting the said children to remain with their said father". On July 6, 1964 the parties executed an agreement incidental to the pending divorce action which referred to the custody order of October, 1963, confirmed custody in the father, and provided a payment of $2,500 together with an irrevocable trust in the amount of $25,000 to be paid in monthly installments of $250 for the mother. A decree of divorce for indignities to the person

was granted to the mother by the Court of Common Pleas on August 7, 1964. This decree approved the property and custody agreement.

Thereafter, the three children remained with their father in Pennsylvania until April 21, 1967 when Cindy came to this State to visit her mother, who had married again and taken up residence in a house trailer in Allegany County with her present husband and his two children of a prior marriage. When the time came for her return home Cindy expressed such a strong desire to remain with her mother that she has not been returned to her father.

No attempt has been made by the mother to secure a modification of the Pennsylvania decree confirming custody of all three children in the father. Sometime after April, 1967 the father was served with a summons in a custody proceeding in Pennsylvania (apparently commenced by the mother), but on the date set for the hearing the mother did not appear. Thereafter the father commenced this habeas corpus proceeding in the Supreme Court of this State to regain custody of Cindy and the matter was referred to the Family Court of Allegany County. In awarding custody of this child to the mother, Family Court found that "there has been a substantial change of circumstances since the separation of the parties".

Upon the record before us we conclude that the circumstances have not altered sufficiently to justify a change in custody of one of three children who, except for short intervals, has been in continuous custody of the father since the original separation in January, 1962. While there is no doubt that the decree of the Pennsylvania court does not deprive the courts of this State of jurisdiction to alter custody of a child within the State, because "The full faith and credit clause does not apply to custody decrees" (*Matter of Bachman v. Mejias,* 1 N Y 2d 575, 580), nevertheless that decree, rendered by a court with jurisdiction of the infant by reason of domicile, is entitled to "willing recognition, except in extraordinary circumstances affecting the health and welfare of the children". (*Matter of Lang v. Lang,* 9 A D 2d 401, 409, affd. 7 N Y 2d 1029.) On an application made in this State to determine permanent custody, a prior custody award made by a court of a sister State should not be disturbed unless it is shown that there has been "an extraordinary intervening change in circumstances". (*People ex rel. Sloane v. Sloane,* 20 A D 2d 862, affd. 15 N Y 2d 561.) A mere improvement in the condition, status or character of the noncustodial parent does not warrant a change of custody, at least "so long as the custodial parent

has not been shown to be unfit, or perhaps less fit, to continue to serve as the proper custodian.'' (*Matter of Lang* v. *Lang, supra*, p. 409; see also *Matter of Berlin* v. *Berlin,* 21 N Y 2d 371.)

Bearing in mind the foregoing standards, the record fails to demonstrate a sufficient change in circumstances which is necessary to support a reversal of the custody award made by the Pennsylvania domiciliary court. Nothing was offered to show that the father was any less fit to have the children in his care than he was in 1963 and 1964, when the mother admitted that the best interests and general and permanent welfare of the children would be promoted by their remaining with him. The evidence shows that petitioner has been an exemplary father; has devoted time, attention and affection to the children; has joined in activities and travelled with them; has provided them with an abundance of the necessaries of life; has secured the services of an able and affectionate housekeeper and has employed a practical nurse to look after Cindy's asthmatic condition, seeing that the child receives prescribed injections and makes required visits to an allergist; and has encouraged the continuation of a relationship between the children and their mother by permitting unlimited visitation privileges and by taking them to their mother's home anytime the children want to go. Even the mother has voiced no criticism of the manner in which the father is caring for the children.

On the other hand, the record does not demonstrate the same abiding interest on the part of the mother. She herself testified that in the period from 1965 to 1967 she saw the children on only three occasions, despite the fact the father was entirely co-operative about visitation. She has made no effort to regain legal custody of Cindy by appropriate proceedings to modify the outstanding Pennsylvania decree. Unlike the father, she has not attempted to maintain the status of the other parent in the children's eyes but, according to one of the older children, has spoken uncomplimentarily of him and has made statements about the father which the child characterized as untrue and really exaggerated. Finally, the evidence of the mother's own conduct since her separation from petitioner casts considerable doubt on the wisdom of entrusting to her care a daughter who is approaching the teen years.

The father testified that he is not willing to split up the three children of the marriage. (The mother has professed no interest in obtaining custody of Randy and Linda and neither of these children wishes to leave the father's home.) Cindy's mother also testified that, up until April, 1967, she believed

the children should be kept together. The guardian ad litem appointed to protect Cindy's interests recommended that she remain with the core of her family in her father's home. This recommendation, made by a presumably disinterested, qualified person whose only concern was the welfare of the child, is entitled to some consideration and assumes added merit when it is considered that the alternative is placing this 10-year-old child in a family which includes a step-father, a step-brother and a step-sister.

The only factor which supports the award of custody to the mother is the desire of the child, expressed to the court at the hearing in chambers, to remain with her mother. However, it must be borne in mind that Cindy was 10 years old at the time of the hearing and easily influenced. For example, one of her reasons for preferring her mother's home was the accessibility of boating, fishing and swimming facilities on the lake near which the mother's trailer home is located. Prior to coming to the latter home in the spring of 1967 the child was happy as a member of the family unit at her father's home. Since being with her mother, Cindy has come to dislike "everything" and "everyone" she loved at the Pennsylvania home. It is apparent that this child is not competent to make the final decision as to which parent should have custody. We may not abdicate the function of this court to determine what is in the best interest of the child and permit the youngster to be the sole judge of her own welfare. In *People ex rel. Glendening* v. *Glendening,* (259 App. Div. 384, affd. 284 N. Y. 598) it was held error to award custody of a 16-year-old boy to his mother by reason of his expressed preference for her and his repeated testimony of love for his mother and lack of love for his father, when upon the record the court was satisfied — as here — that the child's best interests would be served by continued custody in the father.

Finally, we are not convinced that Cindy's asthmatic condition requires a change of custody to her mother. Her condition appears to have improved as she has grown in years and as she has continued a long series of innoculations. While she was formerly allergic to most animals, apparently she is now able to be around a pony at her mother's home without adverse effect so that the horses and cows at her father's home may very well no longer cause a reaction. With his past experience with her asthmatic condition and the real concern which he has demonstrated, there is every reason to believe that Cindy's father will be alert to take all steps indicated to alleviate any difficulty which might arise.

Upon this record—which lacks proof of an extraordinary or substantial change of circumstances—the Family Court Judge was not justified in disturbing the Pennsylvania court's prior custody award to petitioner. Accordingly, the judgment should be reversed and custody awarded to the father with visitation rights to the mother as provided in the Pennsylvania decree.

WILLIAMS, P. J., BASTOW, GOLDMAN and MARSH, JJ., concur.

Judgment unanimously reversed, without costs, and judgment granted awarding custody to the father with visitation rights to the mother as provided in the Pennsylvania decree.