134 Nev., Advance Opinion 21

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

SANDRA LYNN NANCE,
Appellant,
vs.
CHRISTOPHER MICHAEL FERRARO,
Respondent.

No. 72454

**FILED**

APR 05 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to modify child custody and relocate a minor child. Eighth Judicial District Court, Family Court Division, Clark County; Denise L. Gentile, Judge.

*Reversed and remanded.*

McFarling Law Group and Emily McFarling, Las Vegas,
for Appellant.

Hutchison & Steffen, LLC, and Michael K. Wall and Shannon R. Wilson, Las Vegas,
for Respondent.

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

*OPINION*

By the Court, SILVER, C.J.:

In this appeal, we consider whether the district court in a custody modification and child relocation action properly granted a motion in limine to exclude, among other things, evidence of domestic violence under *McMonigle v. McMonigle*, 110 Nev. 1407, 887 P.2d 742 (1994), and

18-900630

*Castle v. Simmons*, 120 Nev. 98, 86 P.3d 1042 (2004).[1] Respondent Christopher Ferraro moved to modify custody and relocate the parties' minor child, and when appellant Sandra Nance opposed the motion, Christopher filed a motion in limine to exclude facts that occurred before the prior custody order was entered. The district court granted the motion in limine under *McMonigle* and *Castle*, and thereafter determined the parties had been exercising joint physical custody and granted Christopher's motion.

To succeed on a motion to modify custody, a party in a joint physical custody arrangement must show that modification is in the child's best interest; but if the opposing party has primary physical custody of the child, the movant must show there has been a substantial change in circumstances affecting the welfare of the child and that modification is in the child's best interest. *Rivero v. Rivero*, 125 Nev. 410, 430, 216 P.3d 213, 227 (2009). Read together, *McMonigle* and *Castle* hold that a party seeking to modify primary physical custody may not use evidence of domestic violence known to the parties or the court when the prior custody order was entered to show a substantial change in circumstances warranting modification. *McMonigle*, 110 Nev. at 1408, 887 P.2d at 743; *Castle*, 120 Nev. at 105, 86 P.3d at 1047. Because questions regarding the scope and application of *McMonigle* and *Castle* continue to come before this court, we take this opportunity to clarify the law.

The threshold issue for this court is whether *McMonigle* and *Castle* also prevent parties from relying on previously known domestic violence evidence to demonstrate modification is not in the child's best

---

[1]We note that *McMonigle* was overruled in part by *Castle*, as discussed below. *Castle*, 120 Nev. at 105, 86 P.3d at 1047.

(O) 1947B

interest. We thereafter consider whether the district court abused its discretion by determining the parties shared joint physical custody and granting Christopher's motion to modify custody and relocate the child. We conclude *McMonigle* and *Castle* do not bar the district court from reviewing the facts and evidence underpinning its prior rulings or custody determinations in deciding whether the modification of a prior custody order is in the child's best interest. These decisions likewise do not prohibit parties from presenting previously known domestic violence evidence defensively to show modification is not in the child's best interest. As a result, we conclude the district court abused its discretion by granting the motion in limine. We further conclude the district court abused its discretion by thereafter determining the parties shared joint physical custody and granting Christopher's motion to modify custody and relocate the minor child without considering the domestic violence evidence in determining the child's best interest.

## FACTS AND PROCEDURAL HISTORY

Sandra Nance and Christopher Ferraro have one minor child, born in 2008. Sandra currently resides in Las Vegas, and Christopher resides in New York. The parties' relationship has long been tumultuous, particularly regarding custody and whether the minor child should reside in Nevada or New York. As relevant to this appeal, prior to the parties' divorce, Sandra alleged that Christopher committed acts of domestic violence and child abuse against her and one of her other children. Child Protective Services (CPS) investigated these allegations, and Sandra represented to the district court that CPS substantiated some of her claims. Then, in the spring of 2011, the parties stipulated to joint legal custody of the minor child, with Sandra being the primary residential parent and

Christopher having parenting time. At the time of that stipulation, the parties were still contemplating reconciliation.

The parties' relationship continued to deteriorate, however, and as a result of their ongoing co-parenting problems, the district court ordered the parties to undergo a custody evaluation in November 2011. The following March, the district court thereafter considered and adopted the recommendations in that evaluation and ordered Christopher to temporarily exercise his parenting time with the minor child in Nevada while Sandra and Christopher worked with a parenting coordinator and completed extensive parenting classes. In November 2012, the parties entered into a stipulated parenting plan, which the district court confirmed, and in which both agreed to share what they termed joint legal and physical custody. The court ordered that Nevada was the child's home state within the terms of the Uniform Child Custody Jurisdiction and Enforcement Act. *See* NRS 125A.005-.585. Thereafter, the child resided with Sandra in Nevada, subject to Christopher exercising parenting time in New York.

In 2015, shortly before the child entered the first grade, Christopher moved the district court to modify the November 2012 order and sought primary physical custody, including permission to relocate the child to New York. Sandra opposed Christopher's motion, arguing she had primary physical custody of the child and Christopher had not shown a substantial change in circumstances since November 2012. She further argued that Christopher had not demonstrated relocation was warranted under Nevada law. Sandra pointed to the domestic violence presumption and the child's best interest, referencing the custody evaluation and evidence of Christopher's domestic violence. Christopher then filed a motion in limine seeking to bar all evidence "relative to the facts and

circumstances existing between the parties prior to the [November 2012] custody order." Christopher argued Sandra's evidence was outdated and barred by *McMonigle*, *Castle*, and the rules of evidence. Sandra opposed Christopher's blanket motion in limine, specifically arguing that the prior custody evaluation and evidence of Christopher's domestic violence and child abuse, including CPS reports and eyewitness testimony, was both relevant and not barred by *McMonigle* or *Castle*.

The district court granted Christopher's motion in limine, first citing *McMonigle*. According to the district court minutes, the court barred evidence of the domestic violence allegations "unless [the allegation] was unknown to Plaintiff . . . or unknown to the Court at the time of the last order, as prescribed by *Castle v. Simmons*." The district court advised that, if Sandra attempted to raise domestic violence evidence, Christopher would bear the burden of proving that the parties or the court previously considered that evidence.

Following an evidentiary hearing, the district court granted Christopher's motion to modify joint custody in favor of primary physical custody and granted his motion to relocate the child to New York. In so doing, the district court concluded that, as a matter of law, the parties had been exercising joint physical custody over the child and made detailed findings regarding the child's best interest. The district court separately concluded that even if Sandra had been exercising primary physical custody, changed circumstances and the best interest considerations still supported modifying custody.[2] This appeal followed.

_____

[2]In determining that circumstances affecting the child's welfare had changed since the prior custody determination, the court relied on the child's decreased need for weekly therapy; the child's age and the

## ANALYSIS

On appeal, the parties ultimately contest whether the district court properly granted Christopher's motion to relocate the minor child. At a fundamental level, however, the parties disagree about the nature of their custody arrangement at the time Christopher brought his motion and whether the district court properly granted the motion in limine excluding Sandra's evidence of domestic violence.[3] These issues are interrelated, as the district court must consider evidence relevant to the child's best interest when determining what custody arrangement is actually in effect and whether modification of that arrangement is warranted. *See Bluestein v. Bluestein*, 131 Nev. 106, 109, 345 P.3d 1044, 1046 (2015). We therefore begin our analysis by addressing the motion in limine ruling before turning to the district court's determination that the parties exercised joint physical custody and its subsequent decisions regarding custody modification and relocation.

*Standard of review*

We review the district court's evidentiary decisions and custody determinations for an abuse of discretion. *Castle*, 120 Nev. at 101, 86 P.3d at 1045 (noting we review custody determinations for an abuse of discretion); *State ex rel. Dep't of Highways v. Nev. Aggregates & Asphalt Co.*,

---

importance of extracurricular activities, socialization, and better educational opportunities in New York; Sandra's failure to ensure her oldest child successfully completed high school on time; and the changes in Christopher's career.

[3]Christopher also contends Sandra waived her argument that the court improperly barred her evidence by failing to try to introduce such evidence below. This argument is without merit as the district court barred Sandra from raising that evidence below.

92 Nev. 370, 376, 551 P.2d 1095, 1098 (1976) (reviewing a decision on a motion in limine for an abuse of discretion). Questions of law, however, we review de novo. *Rennels v. Rennels*, 127 Nev. 564, 569, 257 P.3d 396, 399 (2011) (noting we review questions of law de novo).

*The motion in limine*

In granting the motion in limine and excluding Sandra's evidence, the district court relied on *McMonigle* and *Castle*. These cases both addressed district court decisions that modified primary physical custody. *See McMonigle*, 110 Nev. at 1408-09, 887 P.2d at 743-44; *Castle*, 120 Nev. at 103-06, 86 P.3d at 1046-48. In *McMonigle*, the supreme court reinforced long-standing Nevada law holding that a court may modify primary physical custody only where a party's circumstances have materially changed since the last custody order was entered. 110 Nev. at 1408-09, 887 P.2d at 743-44. In so doing, the court held that events that took place before the last custody order was entered were inadmissible to show that circumstances have changed. *Id.*

In *Castle*, the supreme court revisited *McMonigle*'s general rule that previously existing evidence is inadmissible to show a change in circumstances, and clarified that an exception to this rule exists if the evidence was previously unknown to the parties or the court, particularly where the evidence at issue is evidence of domestic violence. 120 Nev. at 104-05, 86 P.3d at 1046-47. There, the supreme court addressed a post-divorce decree order that granted a father's motion to modify custody based on newly discovered evidence that the mother previously engaged in acts of domestic violence against the children. *Id.* at 100-01, 86 P.3d at 1044-45. The court considered whether modification was proper where the facts giving rise to the modification existed before the parties divorced. *Id.* at 101, 86 P.3d at 1045. Ultimately, the court concluded that, although the

domestic violence occurred prior to the parties' divorce, the res judicata doctrine "should not be used to preclude parties from introducing evidence of domestic violence that was unknown to a party or to the court when the prior custody determination was made." *Id.* at 105, 86 P.3d at 1047.

In adopting this modified rule, *Castle* specifically recognized that courts must review domestic violence evidence when determining the child's best interest. 120 Nev. at 105-06, 86 P.3d at 1047-48. The *Castle* opinion went on to state that the district court "must hear *all* information regarding domestic violence in order to determine the child's best interests." *Id.* at 105, 86 P.3d at 1047. Noting that domestic violence can naturally be difficult to discover, the supreme court further explained that the district court "should not be precluded from considering [newly discovered domestic violence evidence] simply because it was not previously raised" and held that "[e]ven previously litigated acts of domestic violence may need to be reviewed if additional acts occur." *Id.* at 105-06, 86 P.3d at 1047-48. However, the court further noted that the doctrine of res judicata would still prevent "parties from relitigating isolated instances of domestic violence that the court has previously examined." *Id.* at 106 n.22, 86 P.3d at 1048 n.22.

The rule adopted in *McMonigle* and later modified by *Castle* stems from the principle that a party must show that a substantial change in circumstances has occurred since the last custody order as a threshold requirement for modifying primary physical custody. *See McMonigle*, 110 Nev. at 1408, 887 P.2d at 743; *Castle*, 120 Nev. at 104, 86 P.3d at 1046. As recognized by the *Castle* court, this substantial change in circumstances requirement is, itself, derived from res judicata principles, which prevent dissatisfied parties from filing repetitive, serial motions until they obtain

their desired result. *Castle* 120 Nev. at 103-04, 86 P.3d at 1046. And the supreme court opinions applying this rule all do so only in the context of addressing the propriety of a moving party seeking to demonstrate changed circumstances based on evidence that existed at the time the *prior custody* order was entered.[4] *See, e.g., Castle*, 120 Nev. at 104, 86 P.3d at 1046; *Hopper v. Hopper*, 113 Nev. 1138, 1143, 946 P.2d 171, 174-75 (1997), *overruled in part by Castle*, 120 Nev. 98, 86 P.3d 1042; *McMonigle*, 110 Nev. at 1408, 887 P.2d at 743.

Thus, *McMonigle* and *Castle* applied their rule in the context of a party seeking to use preexisting evidence to show a change in circumstances supporting a motion to modify primary physical custody. Here, however, the district court applied the rule to an opposition to a motion to modify what the court later determined was a joint physical custody arrangement, where the evidence was relevant to the best interest requirement. As noted above, the threshold requirement for modifying primary physical custody is that the moving party shows there has been a substantial change in circumstances affecting the welfare of the child since the last custody order was entered. *Rivero*, 125 Nev. at 430, 216 P.3d at 227. In contrast, a motion to modify joint physical custody turns solely on

[4]In *Mosley v. Figliuzzi*, 113 Nev. 51, 58, 930 P.2d 1110, 1115 (1997), *overruled in part by Castle*, 120 Nev. at 105 n.20, 86 P.3d at 1047 n.20, the supreme court applied the res judicata principles set forth in *McMonigle* in the context of a motion to modify joint custody to conclude that, even under a best interest analysis, parties may not file repetitive, serial motions seeking to relitigate the same issues based on the same underlying facts. The *Castle* court later overruled this decision "to the extent that it can be read to preclude evidence of which the moving party was unaware when the prior custody order was entered." *Castle*, 120 Nev. at 105 n.20, 86 P.3d at 1047 n.20.

whether the modification is in the child's best interest. *Id.*; *see also* *Bluestein*, 131 Nev. at 111-12, 345 P.3d at 1048 (holding that when the parties dispute whether their custody agreement constitutes joint or primary physical custody, the child's best interest is the "paramount" consideration in the district court's determination of the true nature of the parties' agreement).

The distinction between the substantial change in circumstances and best interest requirements is a critical one and is highlighted by our supreme court's 2007 decision in *Ellis v. Carucci* to revise the test governing motions to modify primary physical custody. Under *Ellis*, while a party moving to modify primary physical custody must still demonstrate a substantial change in circumstances affecting the welfare of the child, the court will only modify custody if the party also shows modification is in the child's best interest.[5] *See Ellis v. Carucci*, 123 Nev. 145, 150-51, 161 P.3d 239, 242-43 (2007). Moreover, both the Legislature and the Nevada Supreme Court have recognized that, in determining physical custody of a minor child, the sole consideration is the best interest of the child. NRS 125.480;[6] *Ellis*, 123 Nev. at 151-52, 161 P.3d at 243.

In the course of determining whether a custody modification is in the child's best interest, courts must consider and articulate specific

---

[5]This test replaced the standard set forth by *Murphy v. Murphy*, 84 Nev. 710, 711, 447 P.2d 664, 665 (1968), which required a party moving to modify primary physical custody to show that the parent's circumstances were materially altered and that the change would substantially enhance the child's welfare. *Ellis*, 123 Nev. at 150, 161 P.3d at 242.

[6]Since Christopher filed his motion, NRS 125.480(4) has been repealed and replaced by NRS 125C.0035(4), which lists the same 12 best interest factors enumerated in NRS 125.480(4).

findings regarding the nonexhaustive list of best interest factors set forth by statute. *See* NRS 125.480(4); *Lewis v. Lewis*, 132 Nev. ___, ___, 373 P.3d 878, 882 (2016). And in making this determination, a court must consider, amongst the factors, "[w]hether either parent or any other person seeking custody has engaged in an act of domestic violence against the child, a parent of the child or any other person residing with the child." NRS 125.480(4)(k). Indeed, the *Castle* court emphasized that courts "must hear *all* information regarding domestic violence in order to determine the child's best interests" and noted that our Legislature recognized the threat domestic violence poses "to a child's safety and well-being" and created a rebuttable presumption to this end: that awarding a parent physical custody is not in the child's best interest if that parent has engaged in acts of domestic violence. 120 Nev. at 105-06, 86 P.3d at 1047-48; *see also* NRS 125.480(5); NRS 125C.003(1)(c).

When a district court considers a motion to modify a prior custody order, it logically follows that the court's evaluation of whether modification is in the child's best interest will necessarily be informed by the findings and conclusions that resulted in the prior custody determination. As a result, it may at times be necessary for the district court to review the evidence that underpinned its previous rulings to determine whether modification of the existing arrangement is warranted. This is especially true where, as here, issues of potential domestic violence are involved.[7] *Castle*, 120 Nev. at 105-06, 86 P.3d at 1047-48.

---

[7]Indeed, the *Castle* court recognized that, even in the changed circumstances context, previously litigated instances "of domestic violence may need to be reviewed if additional acts occur." *Castle*, 120 Nev. at 106, 86 P.3d at 1047-48.

Moreover, broadly limiting the court's ability to consider evidence that predates the latest custody order would be contrary to the policy underlying Nevada's "one family, one judge" rule, which was enacted to keep family cases before a single judge who would be familiar with all facts and history in the case and be better informed when rendering subsequent decisions. *See, e.g.*, NRS 3.025(3); Hearing on A.B. 154 Before the Assembly Committee on Judiciary, 70th Leg. (Nev., March 5, 1999) (addressing the purpose of the rule). Further, to the extent that so limiting the evidence could prevent the district court from determining whether a party engaged in domestic violence in the course of considering what custody arrangement is in the child's best interest, such a result flies in the face of Nevada law requiring the district court to presume that it is not in the child's best interest for an abuser to have custody. *See* NRS 125.480(5); NRS 125C.003(1)(c).

That does not mean, however, that parties are free to relitigate previously decided issues. *See Castle*, 120 Nev. at 105-06, 86 P.3d at 1047-48; *Mosley*, 113 Nev. at 58-59, 930 P.2d at 1114-15 (reversing an order modifying joint physical custody based on a best interest analysis where the motion to modify relied on the same facts that existed when the previous order was entered).[8] For example, if a district court determines that allegations of domestic violence have not been proven in resolving a custody dispute, a party cannot point to only the same set of facts surrounding this

---

[8]As noted above, *Castle* overruled *Mosley* to the extent that *Mosley* purports to bar "evidence of which the moving party was unaware when the prior custody order was entered." *Castle*, 120 Nev. at 105 n.20, 86 P.3d at 1047 n.20. And *Castle* further recognized that such would also apply to evidence of which the district court was not aware. *See id.* at 105, 86 P.3d 1047-48.

alleged instance of domestic violence to support a subsequent custody modification. Similarly, if a district court finds that domestic violence occurred and determines that the offending parent should only have supervised parenting time with the child, the other parent cannot rely on only this same instance of domestic violence to support a subsequent modification to provide the offending parent with even less or no time with the child. Even in the context of opposing a motion to modify custody, a party generally cannot relitigate prior instances of domestic violence the court has previously addressed and decided.

But because a district court will necessarily need to consider the factual basis underlying its prior decision in determining whether it should be modified, it is axiomatic that, in opposing a motion to modify, the nonmoving party can point to the facts and evidence on which the prior order was based to demonstrate that, despite events following the prior order, modification is not in the child's best interest. As noted above, even under the changed circumstances analysis, *Castle*'s provision that pre-decision evidence of domestic violence can be considered only if the parties or the court were unaware of its existence or the extent of the offending conduct applies only to limit what the party *seeking* a custody change can present to demonstrate that changed circumstances supporting modification exist.[9] *Castle*, 120 Nev. at 105, 86 P.3d at 1047.

---

[9]This is not to suggest that preexisting evidence can never be used offensively by a party seeking to show custody modification is in the child's best interest. We note that under *Mosley*, as modified by *Castle*, a moving party could present preexisting evidence of domestic violence so long as it was unknown to the parties or the court when the prior order was entered. *Castle*, 120 Nev. at 105, 86 P.3d at 1047; *Mosley*, 113 Nev. at 58-59, 930 P.2d at 115-16. And as consistent with *Castle*, even previously litigated evidence

We now apply this framework to the issue before us. The record demonstrates that Sandra intended to present the contested evidence to support her position that custody modification was not in the child's best interest. The record also shows that the district court did consider at least some of this evidence in March of 2012 when it ordered the parties to complete parenting classes, and it appears that this evidence weighed into the court's decision to temporarily require that Christopher exercise his parenting time with the child in Nevada pending completion of those classes. In thereafter granting the motion in limine, however, the district court concluded *McMonigle* and *Castle* barred Sandra from presenting evidence that was known to the parties or the court at the time of the November 2012 stipulation and order and excluded this same evidence from its subsequent decisions.

We conclude the district court abused its discretion by granting the motion in limine. Although the record is not entirely clear as to what specific evidence Sandra sought to present or what evidence the court's ruling barred, *McMonigle* and *Castle* do not support the district court's decision under these facts to broadly exclude Sandra's evidence that was known to the parties or the court at the time of the prior custody order. Critically, in opposing Christopher's motion to modify custody, Sandra did not seek to present this evidence to show circumstances had changed or

---

of domestic violence may need to be reviewed if new instances of domestic violence recur. *Castle*, 120 Nev. at 105-06, 86 P.3d at 1047-48.

We further note that the framework set forth in this opinion applies to a court's performance of a best interest analysis in the context of requests to modify both joint and primary physical custody, regardless of whether that analysis comes about under the prior statutory framework, *see, e.g.*, NRS Chapter 125, or under the framework set forth by NRS Chapter 125C.

even that modification was in the child's best interest. Rather, she intended to offer the evidence to oppose the modification request and therefore to show modification was not in the child's best interest. Moreover, the district court could review its prior rulings and the facts underpinning those decisions in determining whether a modification of the custody arrangement was, in fact, in the child's best interest. Thus, the district court misapplied *McMonigle* and *Castle* in this context, as the record does not show that Sandra sought to relitigate the evidence.

With this in mind, we next consider the error's effect on the district court's subsequent rulings and whether the error warrants reversal.

*The custody determinations*

We now turn to Sandra's arguments regarding the district court's finding that the parties exercised joint physical custody and the district court's subsequent decision to modify custody, grant Christopher primary physical custody, and allow him to relocate the child. The record demonstrates that, in evaluating the existing custody arrangement and the motion to modify, the district court carefully and thoroughly applied the law to the facts before the court. However, because the district court erroneously granted the motion in limine, it did not have all of the pertinent facts necessary to conduct the required best interest analysis in assessing the nature of the parties' custody arrangement and resolving Christopher's motion.

Nevada law is clear: the district court *must* consider all the best interest factors in determining the nature of the parties' custody arrangement—that is, whether the parties share joint physical custody or whether one of the parties exercises primary physical custody, in deciding whether to modify custody and in deciding whether to grant relocation. *See*

*Lewis*, 132 Nev. at ___, 373 P.3d at 882 (holding the court must consider each of the best interest factors when modifying custody); *Bluestein*, 131 Nev. at 112, 345 P.3d at 1048-49 (holding that the child's best interest is the "paramount" consideration in determining the nature of an existing custody arrangement and whether that arrangement should be modified); *Druckman v. Ruscitti*, 130 Nev. 468, 473, 327 P.3d 511, 515 (2014) (holding the child's best interest must form the basis of a court's decision regarding relocation).[10] After improperly granting Christopher's motion in limine, however, the district court prevented Sandra from opposing Christopher's motion with evidence of Christopher's alleged history of domestic violence and child abuse, even though such evidence is directly relevant to the best interest analysis. *See* NRS 125.480(4).

We conclude the district court abused its discretion by determining the parties exercised joint physical custody without considering all evidence relevant to the best interest factors.[11] *Bluestein*,

---

[10]In the district court, the parties addressed the propriety of allowing Christopher to relocate the child under Nevada's relocation scheme as it existed prior to the enacting of NRS 125C.007 (governing petitions for relocation and setting forth factors for consideration in reviewing such petitions), as that statute was not in effect at the time Christopher's motion was filed. Therefore, this opinion does not apply NRS 125C.006, NRS 125C.0065, or NRS 125C.007. Nonetheless, even under the new relocation statute, a party seeking to relocate a child must show that relocation is in the child's best interest. *See* NRS 125C.007(1)(b).

[11]We also note NRS 125.480(5), and the statute that replaced it, NRS 125C.0035(5), sets forth a rebuttable presumption against awarding physical custody to a perpetrator of domestic violence. By excluding Sandra's proposed evidence, the district court failed to consider whether a rebuttable presumption existed here and, if so, whether Christopher rebutted that presumption.

131 Nev. at 113, 345 P.3d at 1048-49. Similarly, the district court further abused its discretion when it failed to consider this domestic violence evidence when the court granted Christopher primary physical custody of the minor child and granted Christopher's motion to relocate the minor child. *See Lewis*, 132 Nev. at ___, 373 P.3d at 882 (requiring the court to consider the statutory best interest factors in determining whether custody modification is in the child's best interest); *Druckman*, 130 Nev. at 473, 327 P.3d at 515 (holding that a decision on a motion to relocate a child must be based on the child's best interest).

These errors mandate reversal. *See Lewis*, 132 Nev. at ___, 373 P.3d at 882 (reversing an order modifying custody where the district court failed to set forth specific findings showing adequate consideration of all the statutory best interest factors). On remand, we direct the court to allow Sandra to present evidence in accordance with the principles set forth in this opinion, including the domestic violence evidence and evaluation that the district court considered when making its prior rulings. Likewise, although the district court may not revisit the parties' prior arguments or otherwise allow the parties to relitigate issues, the district court may review any prior rulings and the facts on which those rulings were based.[12]

## CONCLUSION

Under *McMonigle* and *Castle*, litigants who are seeking to modify primary physical custody may not use facts known to the parties or the court at the time the prior custody order was entered to demonstrate

---

[12]We note nothing in this opinion would preclude the district court from determining incidents of domestic violence that the court has not yet ruled upon, in accordance with *Castle*, 120 Nev. at 105-06, 86 P.3d at 1047-48.

there has been a substantial change in circumstances. *McMonigle* and *Castle* do not, however, bar district courts from reviewing the facts and evidence underpinning their prior rulings in deciding whether the modification of a prior custody order is in the child's best interest. These decisions likewise do not prevent litigants from using previously known evidence of domestic violence defensively to argue modification is not in the child's best interest. Here, the district court abused its discretion by concluding *McMonigle* and *Castle* barred the evidence and by granting the motion in limine. Because the district court thereafter failed to consider evidence relevant to the best interest factors, the court further abused its discretion by determining the parties shared joint custody and thereafter granting the motion to modify custody and relocate the minor child. We therefore reverse the district court's order modifying custody and granting relocation and remand for proceedings consistent with this opinion.

_____, C.J.
Silver

We concur:

_____, J.
Tao

_____, J.
Gibbons